PATRICK CHAMPAGNE and MICHELINE CHAMPAGNE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Champagne v. Commissioner
Docket No. 8454-75.
United States Tax Court
T.C. Memo 1977-408; 1977 Tax Ct. Memo LEXIS 33; 36 T.C.M. (CCH) 1652; T.C.M. (RIA) 770408; November 28, 1977, Filed *33 Robert T. Doyle, for the petitioners. Thomas P. Dougherty, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a deficiency in petitioners' income tax for 1971 of $2,911.79, plus an addition to the tax under section 6653(a) [1] of $145.59. Because of concessions by petitioners, the issues for decision are: (1) Whether petitioners understated their gross income in 1971 by $8,728.24.
(2) Whether any part of petitioners' underpayment of tax was due to negligence or intentional disregard of Internal Revenue Service rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. At the time they filed their petition, Patrick Champagne and Micheline Champagne resided in Goshen, Massachusetts. Micheline Champagne is a party only by virtue of having filed a joint return for 1971 with her husband. When we hereafter refer to petitioner, we will be referring to Patrick Champagne. During 1971 petitioner owned and operated a retail package *34 store and gasoline station in rural Massachusetts. He purchased this business the previous year for $29,000, of which $12,000 was paid as a down payment. To finance this purchase, he sold a parcel of property in 1970 from which he realized between $11,000 and $12,000. He used the proceeds of this sale, along with money borrowed (at interest) from his brother-in-law, to pay the $12,000 down payment on the business and to purchase its inventory from the former owner. In 1972 petitioner stated to a revenue agent that he kept $3,000 cash on hand (for the purpose of cashing checks), and made no mention of any other sizeable cash hoard. During 1971, his bank deposits and expenditures exceeded his reported available funds (consisting primarily of gross receipts, funds in checking and savings accounts, and $3,000 cash on hand) by $8,728.24. [2]
*35 In his statutory notice of deficiency, respondent determined a deficiency on the basis of petitioner's failure to report income of $8,728.24, plus an addition to the tax under section 6653(a). OPINION The first issue is whether petitioner understated his gross income for 1971 by $8,728.24. Petitioner asserts that any additions to his savings account during 1971 came from a cash hoard he maintained, not from the receipts of his package store. We are unconvinced. Respondent's determination that petitioner understated his income (presumably from receipts of the package store) is presumptively correct, and petitioner has the burden of proving that respondent's determination was wrong. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent determined petitioner's income on the basis of the bank deposits/cash expenditures method.Although proof of bank deposits alone does not conclusively establish that the sums deposited were taxable income during the year in question, petitioner has the burden of proving erroneous respondent's determination to that effect. Jones v. Commissioner, 29 T.C. 601, 613-614 (1957); *36 Goe v. Commissioner, 198 F. 2d 851, 852 (3d Cir. 1952), cert. denied 344 U.S. 897 (1952). In this case, the only evidence petitioner presented was his testimony that he had maintained a cash hoard prior to 1971, and in that year his wife induced him to "sprinkle" his hoard into his savings account. Prior to that time, petitioner maintained, he had saved money earned by his labors but had not placed the money into a bank because he did not believe in them. He did not know the size of his hoard, nor did he have any corroborating evidence of this story. We find his story incredible for several reasons. First, if petitioner had a sizeable cash hoard on hand at the beginning of 1971, it is doubtful that he would have needed the proceeds of the sale of property in 1970 to finance his purchase of the package store. He stated at trial that he used only a portion of the proceeds from the sale for this purpose, but in his conversation with a revenue agent in 1972 he admitted that the entire proceeds of the sale of property were used for the down payment on the store. In addition, he admitted at trial that he had borrowed several thousand dollars from his *37 brother-in-law for this purchase; it seems unlikely that an individual with a sizeable cash hoard would borrow several thousand dollars on which he had to pay interest. Finally, petitioner stated to a revenue agent in 1972 that the amount of cash he had on hand was $3,000, and he made no mention at that time of any cash hoard. These facts undermine petitioner's explanation of the additions to his bank account in 1971. In the absence of any other evidence, we must conclude that petitioner has failed to meet his burden of proof. Respondent also determined that petitioner is liable for an addition to the tax under section 6653(a). Section 6653(a) provides for an addition to the tax of 5 percent of the "underpayment" where any part of such underpayment is due to negligence or intentional disregard of the rules and regulations of the Internal Revenue Code.The burden of proof again rests on petitioner to rebut respondent's determination, Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Since petitioner offered no evidence on the issue of negligence, we sustain respondent's determination that petitioner is liable for an addition to the tax under section 6653(a). *38 Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. FUNDS AVAILABLE: 1. First National Bank of
Northampton, MA Savings
Account balance 1/1/71
$ 3,001.48
2. First National Bank of
Northampton, MA Checking
Account balance 1/1/71
1,593.67
3. Gross Receipts (Schedule C)
198,006.00
4. Allowance for foster child
900.00
5. Interest income
549.00
6. Sale of property (net proceeds)
2,963.00
7. Rental income
550.00
8. Cash on hand 1/1/71
3,000.00
$210,563.15
BANK DEPOSITS AND EXPENDITURES: 1. First National Bank of
Northampton, MA Savings
Account balance 12/31/71
$ 20,909.69
2. First National Bank of
Northampton, MA Checking
Account balance 12/31/71
553.10
3. Capital Improvement Expenses
5,530.00
4. Loan Repayments
2,598.74
5. Business Expenses - less
depreciation
181,619.00
6. Personal Living Expenses
4,518.86
7. Rental Expenses - less
depreciation
562.00
8. Cash on hand - 12/31/71
3,000.00
$219,291.39
Petitioner agrees with the accuracy of the above schedule except for the entries "Cash on hand" as of both January 1, 1971 and December 31, 1971.↩